## COMMONWEALTH v. HOOPES MARSHALL.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SES-
SIONS OF CHESTER COUNTY.

Argued February 10, 1890—Decided October 13, 1890.

Where one is indicted for obstructing a long-used public highway, by the erection of a private wall upon what he claims to be his property line, the question as to his defence is, not whether his wall is within the lines of the highway as originally laid out, reported and confirmed, but whether it is within its lines as maintained by the supervisors and used by the public.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 21 July Term 1889, Sup. Ct.; court below, number and term not given.

On January 30, 1889, the grand jury returned as a true bill an indictment charging Hoopes Marshall with unlawfully obstructing a public highway. Issue.

At the trial on January 31, 1889, it was shown, in substance, that one George Ashbridge, by his will made on March 30, 1773, gave two roods of land for a public highway, to be laid out north of what at the date of the alleged obstruction was the land of the defendant; that in 1849, for some reason, a proceeding was instituted in the Quarter Sessions by which a public highway was laid out and confirmed by the court to be opened thirty-three feet wide, with its south line upon the north line of the said land; that the road was afterwards opened by the supervisors and traveled by the public until the date of this trial; that there was a fence on the north side of it which had been there, at the time of the trial, for twenty-five years, but there was evidence that it was only about fifteen feet from the centre of the roadway as used by the traveling public; that there was no fence on the south side of the road, until a short time before the prosecution was begun, when the defendant, having had a survey of his land made and his north line ascertained, caused a wall to be erected a few inches within his

Charge of Court below.

line, as he claimed it, which left for a roadway, as claimed by the commonwealth, a width of but little over sixteen feet from the wall to the ditch on the north side of the road. Hence this case.

The defendant contended, as stated in his History of the Case, " that the road having been willed, laid out and opened thirty-three feet north from his line, it would remain so, until changed under proceedings for that purpose in court."

At the close of the testimony, the court, WADDELL, P. J., charged the jury:

We say to you that under the circumstances of this case and under the evidence, these supervisors must take that road as they find it, and they have no power to change its location. [If, in their opinion, it was not thirty-three feet wide, then they had the power to widen it, but in thus widening it they must ascertain as well as they can the centre of the present roadbed and widen it from that centre line sixteen and one half feet on each side.] 5 As we have suggested before, in the course of the trial, if that took down Mr. Cloud's fence, it must come down; it it took down anybody else's fence, it must come down. But they cannot take the whole width off Mr. Cloud any more than they can take the whole width off Mr. Marshall. Now you see gentlemen, just how far, in the estimation of the court, the supervisors of that township had power. If we are wrong, then there is an opportunity to correct us.

Now what are the circumstances here? Is there, from the testimony, or from the observation which you have had the opportunity of enjoying, a well defined, beaten track for this road? [As I said to you, if there was a fence upon the south side, there could be no question whatever, but the absence of that fence on that side makes it necessary for you to determine the limit of the roadbed upon that side of the road.] 6 Is there a well defined roadbed there? Does the testimony in the case, or the observation which you have made, satisfy your minds that the roadbed as used and occupied and enjoyed by the public for years is defined on the ground? I do not mean by that, gentlemen, are there tracks there where wagons have traveled, but is there a roadbed defined, such as is customary

Charge of Court below.

and usual in country roads? If it is, then that is the roadbed of this road, without regard to Mr. Ashbridge's will, or without regard to the laying out by the former jury. . . . . .

The defendant has asked me to charge you upon some points which he has submitted for my consideration, involving, as he understands it, the law in the case.

1. That the evidence adduced on the part of the defendant clearly shows that the road in question was laid out and opened thirty-three feet wide north of the defendant's line, and upon ground dedicated to the public by the will of George Ashbridge and accepted as such by the township; the supervisors cannot now claim more ground than thirty-three feet, and the defendant must be acquitted.

Answer: I cannot affirm that point in its entirety; I cannot say that under the circumstances of this case the defendant must be acquitted. I must therefore disaffirm that point, while there are some principles in it that I would consider were law.[1]

2. That the road in question was laid out and opened on the ground willed by George Ashbridge for a public road, thirty-three feet wide north of the wall built by the defendant, and, having once been laid out and opened, cannot be altered except by a new and original proceeding according to the road law.

Answer: That principle I affirm; there is no question at all about that.

3. That if the jury believe that Hoopes Marshall occupied no part of the public road laid out and opened on the ground willed by George Ashbridge for a public road, the defendant is not guilty of the offence with which he is charged and shall be acquitted.

Answer: That point is disaffirmed.[2]

4. That there is no evidence in this case for the jury to find that the ground upon which the stone wall was built was ever taken and occupied by the public for a highway according to law.

Answer: That point is disaffirmed.[3]

5. That under all the evidence in this case the court should direct the jury to acquit the defendant.

Answer: I cannot do that. I must say to you that it is a question of fact for your consideration, in connection with the principles of law as I have endeavored to explain them to you.[4]

Opinion of the Court.

—The jury returned a verdict that the defendant was guilty, etc. A rule for a new trial having been discharged, judgment was passed, when the defendant took this appeal, assigning for error:

1–4. The refusal of defendant's points.[1 to 4]

5, 6. The portions of the charge embraced in [ ] [5 6]

*Mr. John J. Gheen*, for the appellant.

Counsel cited: Clark v. Commonwealth, 33 Pa. 112; Holden v. Cole, 1 Pa. 303; Furniss v. Furniss, 29 Pa. 15; McMurtrie v. Stewart, 21 Pa. 322.

*Mr. Thomas W. Pierce* (with him *Mr. Thomas W. Baldwin*, District Attorney, and *Mr. Charles H. Pennypacker*), for the commonwealth.

OPINION, MR. JUSTICE McCOLLUM:

The defendant was indicted for obstructing a public road which was duly laid out in 1849, and was opened by the township supervisors that or the following year. It was claimed by him, on the trial, that the road was opened where it was laid by the viewers. The location of the roadbed has never been changed since, but has always been maintained by the supervisors where it was then constructed or defined. The fence on the north side remains where it was placed when the road was opened, and is about fifteen feet from the centre of the roadbed. The only question submitted to the jury was whether the defendant had built his wall upon or within the limits of this roadbed, and thereby obstructed public travel. There was a verdict of guilty, followed by a sentence of the defendant, and a removal of the case to this court. His contention was, and now is, that the road was laid and opened north of his property line, and that his wall was built south of that line. But, as it is established by the verdict that his wall was within the limits of the defined roadbed, it is obvious that his property line is there, if his wall was built south of it. In that event the conclusion must be, either that the road was not laid north of the line, or it was not opened as laid. But if it was laid and opened, as he contends, his wall was north of his property line, and the conviction must stand, unless erroneous instructions contributed to it.

Opinion of the Court.

We discover no error in the denial of the defendant's first, third, fourth, and fifth points. The affirmance of his second point was not a concession that the facts were as stated in it, and that it was not intended as such sufficiently appears from the answer to the point, and the general charge. The road was not opened of the width of thirty-three feet, and the question was not whether his wall occupied any portion of the Ashbridge ground, but whether it was upon or within the limits of the roadbed as defined by the supervisors, and used by the public for forty years.

We do not think the defendant was prejudiced in any degree by the remarks of the learned judge relative to the rights and duties of supervisors in opening and widening roads. The instructions were so distinct and positive that there could be no conviction of the defendant unless his wall was built within the limits of the established roadbed, that the jury could not misunderstand them. The roadbed does not occupy the entire width of the road as laid. It is that part of the road which is designated and maintained by the township supervisors for the public to travel upon, and it is usually bounded by ditches on either side of it. An instruction that the erection of the wall within sixteen and one half feet of the centre of the roadbed would authorize a conviction of the defendant, might have raised the question discussed in his paper-book. But that question is not on this record. We will say, however, that, if such instruction had been given in this case, there is nothing before us on which we could pronounce it erroneous. The learned judge told the jury that, under the evidence in the case, the supervisors could not change the location of the road, but if it was not opened of the full width of thirty-three feet, they might widen it sixteen and one half feet on each side from the centre of the roadbed. But, as the defendant has not printed the evidence for our information, we cannot deny the accuracy of an instruction based upon it. We are unable to see how a party who admits that a road was opened where it was laid out, and that the roadbed which was then constructed or defined has always been maintained and used by the public since, can lawfully obstruct either.

The judgment is affirmed.